**No. 25-447**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

State of Oregon,

*Plaintiff-Appellant*,

v.

Samuel Landis,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Oregon
Case No. 6:23-cr-330-MC
The Hon. Michael J. McShane, United States District Judge

## DEFENDANT'S RESPONSE BRIEF

DAVID H. ANGELI
MICHELLE H. KERIN
AMY E. POTTER
AMANDA THIBEAULT
Angeli & Calfo LLC
121 SW Morrison St., Suite 400
Portland, OR 97204
Telephone: (503) 222-1552
Email: david@angelicalfo.com
    michelle@angelicalfo.com
    amy@angelicalfo.com
    amanda@angelicalfo.com

*Attorneys for Appellee Samuel Landis*

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................1

II.  JURISDICTIONAL STATEMENT AND BAIL STATUS ................1

III.  ISSUES PRESENTED FOR REVIEW .................................2

IV.  STATEMENT OF THE CASE ............................................2

    A.  Factual Background .................................................2

    B.  Procedural Background..............................................9

        1.  The State Indicts Agent Landis. .......................9

        2.  The Case Is Removed to Federal Court.........................9

        3.  The District Court Dismisses the Case Based on Supremacy Clause Immunity. .........................9

V.  SUMMARY OF THE ARGUMENT................................12

VI.  STANDARD OF REVIEW ...............................................13

VII.  ARGUMENT ...............................................................15

    A.  Agent Landis Is Entitled to Immunity if His Conduct Was Within the Scope of His Duties and Was Objectively and Subjectively Necessary and Proper................15

    B.  The District Court Properly Decided Pretrial that Agent Landis was Entitled to Immunity..............................17

        1.  The District Court Was Not Bound by the Indictment's Allegations.................................19

        2.  The District Court Properly Found the Relevant Facts Were Undisputed and Supported Immunity. ........21

        3.  The district court properly considered DEA policy and found no violation...................................23

    C.  The District Court Correctly Concluded that Agent Landis is Entitled to Supremacy Clause Immunity. ................24

        1.  Agent Landis Subjectively Believed His Actions Were Necessary and Proper...........................24

2.     Agent Landis's Actions Were Objectively
       Reasonable. .......................................................28

VIII.  CONCLUSION .......................................................34

# TABLE OF AUTHORITIES

## Cases

*Oregon v. United States Dist. Ct. for Dist. of Oregon, Eugene*,
  No. 24-161, 2024 WL 2270514 (9th Cir. May 20, 2024) .......................... 1, 9, 16

*California v. Dotson,* No. 12-cr-0917-AJB, 2012 WL 1904467
  (S.D. Cal. May 25, 2012) ..................................................................32

*Clifton v. Cox*, 549 F.2d 722 (9th Cir. 1977) .................................... passim

*Graham v. Connor*, 490 U.S. 386 (1989) .................................................30

*Hancock v. Train*, 426 U.S. 167 (1976) ...................................................15

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .............................................16

*Hunter v. Bryant*, 502 U.S. 224 (1991) ...................................................17

*Idaho v. Horiuchi*, 253 F.3d 359 (9th Cir.) (*en banc*), *vacated as moot*,
  266 F.3d 979 (9th Cir. 2001) ........................................................ 16, 18

*In re McShane,* 235 F. Supp. 262 (N.D. Miss. 1964) ..................................... 17, 32

*In re Neagle*, 135 U.S. 1 (1890) ...........................................................15

*Kentucky v. Long*, 837 F.2d 727 (6th Cir. 1988) ............................................ passim

*Lennon v. Miller,* 66 F.3d 416 (2d Cir. 1995) ............................................30

*Malley v. Briggs*, 475 U.S. 335 (1986) ...................................................30

*Mesa v. California*, 489 U.S. 121 (1989) .................................................32

*Morales v. Fry*, 873 F.3d 817 (9th Cir. 2017) ...........................................29

*Morgan v. California*, 743 F.2d 728 (9th Cir. 1984) .....................................32

*New York v. Tanella*, 281 F. Supp. 2d 606 (E.D.N.Y. 2003) ..................................30

*Rieman v. Vazquez*, 96 F.4th 1085 (9th Cir. 2024)....................................................14

*Spencer v. Pew*, 117 F.4th 1130 (9th Cir. 2024).......................................................30

*State v. Cisneros*, 947 F.2d 1135 (4th Cir. 1991) ....................................................32

*State v. Ivory*, 906 F.2d 999 (4th Cir. 1990) ...........................................................32

*Tanella v. City of New York*, 374 F.3d 141 (2d Cir. 2004)............................. passim

*Texas v. Kleinert*, 855 F.3d 305 (5th Cir. 2017) ............................................... 15, 32

*Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011) .......................................28

*United States v. Lyman*, 592 F.2d 496 (9th Cir. 1978) ............................................19

*United States v. Ramirez,* 710 F.2d 535 (9th Cir. 1983).........................................19

*United States v. Smith*, 866 F.2d 1092 (9th Cir. 1989)............................................17

*Wyoming v. Livingston*, 443 F.3d 1211 (10th Cir. 2006) .......................... 15, 16, 32

## Constitution and Statutes

U.S. Const. art. VI, cl. 2 .........................................................................................15

28 U.S.C. § 1291 .......................................................................................................2

28 U.S.C. § 1442 .....................................................................................................1, 9

ORS 163.145 ............................................................................................................9

## Rules

Fed. R. Crim. Pro. 12 ........................................................................................ 17, 22

## I.    INTRODUCTION

The question in this case is whether Drug Enforcement Administration (DEA) Special Agent Samuel Landis is entitled to immunity from criminal prosecution by the State of Oregon for a tragic traffic accident that occurred while he was engaged in active surveillance of a dangerous fentanyl dealer in Salem, Oregon. After a pretrial evidentiary hearing, the district court concluded the answer was "yes;" Agent Landis was engaged in his official duties and did what he reasonably believed was necessary and proper, entitling him to immunity. 1-ER-2-13. The State of Oregon takes issue with that decision, claiming the district court failed to properly examine the facts. The State is wrong; the district court properly concluded that Agent Landis was entitled to immunity. This Court should affirm.

## II.    JURISDICTIONAL STATEMENT AND BAIL STATUS

Because the State charged Agent Landis with a crime based on actions that occurred while he was working as a federal law enforcement officer, Agent Landis removed the case to federal court. 28 U.S.C. § 1442(a)(1). The district court granted the removal, and this Court affirmed. *Oregon v. United States Dist. Ct. for Dist. of Oregon, Eugene*, No. 24-161, 2024 WL 2270514, at *1 (9th Cir. May 20, 2024). The district court, therefore, had jurisdiction over Agent Landis's case.

Agent Landis filed a pretrial motion to dismiss, arguing that he was immune from prosecution by the State based on the Supremacy Clause. ECF No. 37. After an

- 1 -

evidentiary hearing, the district court agreed and dismissed the indictment. 1-ER-13. The State timely filed a notice of appeal, and this Court has jurisdiction over that final order. 28 U.S.C. § 1291.

Agent Landis was arrested by the State and released on bail. After the case was removed to federal court, the district court did not impose any release conditions on Agent Landis. The State returned a portion of the bail money.

## III. ISSUES PRESENTED FOR REVIEW

Whether the district court correctly concluded—based on undisputed testimony, video evidence, and DEA policy—that Agent Landis's actions during a federal surveillance operation were necessary and proper, thereby entitling him to Supremacy Clause immunity from state prosecution.

## IV. STATEMENT OF THE CASE

### A. Factual Background

The United States is in the throes of a fentanyl epidemic, and Oregon has not been spared. *See* 1-ER-6; 2-ER-78; 3-ER-187-89. The DEA, tasked with enforcing the nation's controlled substances laws, is on the front lines of this crisis. 3-ER-185, 187. This case arises from a long-term investigation in Salem, Oregon, conducted by a task force comprised of DEA agents and local law enforcement, into a multinational drug trafficking organization distributing fentanyl in Oregon and beyond. 3-ER-186-87.

As the Special Agent in Charge of the DEA in Oregon explained, fentanyl poses a "prevalent and serious" threat in Oregon and is one of the DEA's highest priorities. 3-ER-187, 189. Marion County, where the events at issue occurred, was among the hardest hit in the state, recording the state's highest emergency room and hospital visit rates, due in part to its location along the Interstate 5 drug corridor. 3-ER-189-90. Agent Landis, a sworn federal law enforcement officer with over seven years of DEA experience, was part of the task force working to trace fentanyl back to its source and ultimately disrupt the supply flooding Oregon communities. 3-ER-187-88, 190, 290-91, 295.

On March 28, 2023, the Task Force made a controlled purchase of 1,000 fentanyl pills from a suspected mid-level dealer who was new to the community. 3-ER-205. Rather than arresting the trafficker—a short-term move that would have little impact—the agents opted to surveil him in hopes of uncovering broader organizational ties. 3-ER-203, 205. The objective was to identify not only the individual dealer, but his patterns, his stash houses, and his customers. 3-ER-202.

Surveillance is one of the DEA's most effective tools for dismantling drug networks. 3-ER-191, 194. Its value lies not in immediate arrests, but in the intelligence it yields to "disrupt and dismantle" entire organizations. *Id*. But surveillance is inherently risky and unpredictable. Drug couriers often engage in counter-surveillance—driving erratically, disobeying traffic laws, and sometimes

carrying weapons—to evade detection. 3-ER-192-95. These tactics escalate the danger not only to law enforcement but also to the public.

To respond, agents must coordinate closely, always knowing where their teammates are to avoid gaps in coverage or risk to the mission. 3-ER-195. During a surveillance operation, multiple vehicles are tasked with monitoring the target. 3-ER-193. Typically, three vehicles follow behind the target, with the remaining cars following on nearby streets, ready to seamlessly rotate in at a moment's notice. *Id*. No agent remains fixed in place; instead, team members continually shift positions to avoid detection and maintain contact with the target. 3-ER-193-94.

Because surveillance requires dynamic movement, agents may need to violate traffic laws, including speed limits, turn signals, or traffic control devices like stop signs. 3-ER-196–98. As one senior agent explained, DEA surveillance would be "completely ineffective" without this flexibility. 2-ER-92. DEA policy reflects this reality: while agent and public safety remain paramount, the policy authorizes agents to exercise judgment in the moment, including whether to disobey traffic laws during law enforcement activities. 3-ER-198.

On the day of the accident, Agent Landis and his team were surveilling an unidentified drug trafficker who had just sold 1,000 fentanyl pills to a confidential source. 3-ER-199-200, 205. They understood that the intelligence they were gathering could help curb the local fentanyl supply and prevent future overdose

deaths. 3-ER-202. That made this an important mission. 3-ER-200, 202. But it was also a difficult one; the target was driving erratically and violating traffic laws. 3-ER-251.

The suspect eventually turned north onto Liberty Street in downtown Salem. 3-ER-251. Several agents were following him. 3-ER-352.



Suddenly and without signaling, the suspect made an abrupt right turn from either the far left or center lane onto Mission Street, cutting across at least one lane of traffic. 3-ER-252–53. The lead surveillance vehicle, directly behind the suspect,

couldn't react in time, missed the turn, continued through the intersection, and

turned right at the next opportunity—Leslie Street—while radioing that he had lost

visual contact. 3-ER-252–54.

Other agents also missed the turn. With the suspect employing evasive tactics,

the surveillance team risked losing him. 3-ER-255. The priority became regrouping,

both to maintain the integrity of the operation and to ensure officer safety if the

situation escalated. *Id.*

Agent Landis, several cars back, was among those who missed the turn. He

also turned onto Leslie Street, intending to loop back and rejoin the surveillance. 3-

ER-321–22. Just before the accident occurred, the agents and the target were

positioned as follows:



*See* 1-ER-9 (describing Exhibit 6 as "informative" and displaying the scene and locations of each officer).

At this point, Agent Landis was aware that he and others were out of position. 3-ER-323. Recognizing that the surveillance was at a critical juncture, he testified that he was driving with "a sense of purpose" to reestablish contact with the team and the target. 2-ER-150; 3-ER-324–25.

As Agent Landis explained, this was no routine drive. He was not "driving to and from work" and was not "on [his] personal time carrying out . . . normal everyday tasks." 3-ER-324. Rather, he "was a part of a critical mission involving a dangerous fentanyl trafficker." *Id.* And he knew this was a "critical moment" and

that he needed "to do what was necessary to carry out [his] job duties that day, and that was to get back to Mission Street and back in the follow to complete the mission." 3-ER-325. Agent Landis drove with a purpose to complete that mission. 3-ER-324.

As he approached the intersection of Leslie and High Streets, Agent Landis slowed, looked both ways, and proceeded through the stop sign at approximately 18 mph. 3-ER-328–30. Based on what he knew at that moment,[1] Agent Landis believed it was both safe and necessary to continue. 3-ER-331. He understood this decision to fall within the scope of his duties, explaining that his "entire role that day was to be an active and effective member of surveillance," which required him to "act quickly" to rejoin the team. He believed he could proceed through the intersection "without endangering anybody's safety." 3-ER-331.

Tragically, Agent Landis did not see a cyclist traveling downhill on High Street. The cyclist collided with the driver's side of his vehicle. 3-ER-332-33. Agent Landis immediately got out of his truck and, with other agents, rendered aid until emergency responders arrived. 3-ER-333-34. Despite their efforts, the cyclist did not survive.

---

[1] Although subsequent investigation revealed visibility issues at the intersection, it is undisputed that Agent Landis was not familiar with the intersection. 3-ER-337-38. Testimony also established that there was a hedge that further obstructed the view; it was removed after the accident. 2-ER-76.

### B.   Procedural Background

#### 1.   The State Indicts Agent Landis.

Following its investigation, the Marion County District Attorney's Office presented the case to a grand jury, which returned an indictment charging Agent Landis with criminally negligent homicide under ORS 163.145. 2-ER-26.

#### 2.   The Case Is Removed to Federal Court.

On October 16, 2023, Agent Landis removed the case to federal court pursuant to the federal officer removal statute. 28 U.S.C. § 1442(a)(1). He asserted that removal was proper because he was a federal officer acting under color of his office and had a colorable federal defense—namely, that he was entitled to immunity. The district court agreed, and the State's mandamus petition to this Court seeking remand was denied. *United States Dist. Ct. for Dist. of Oregon, Eugene*, 2024 WL 2270514, at \*1.

#### 3.   The District Court Dismisses the Case Based on Supremacy Clause Immunity.

After removal, Agent Landis moved to dismiss the indictment on the ground that he was immune from state prosecution under the Supremacy Clause. ECF No. 37. Because the material facts were undisputed—including that Agent Landis was on duty and engaged in surveillance at the time of the accident—he argued that the only issue before the court was whether his actions were "necessary and proper" to the

- 9 -

performance of his federal duties, and that the undisputed facts established that they were. *Id.*; *see also* ECF No. 43.

The State opposed dismissal, not by disputing the facts, but by contending that Agent Landis's conduct was unreasonable. ECF No. 40. Specifically, the State argued that there was no emergency justifying the stop sign violation and that the occurrence of the accident itself rendered his belief in the safety of the maneuver unreasonable. *Id.*

After an evidentiary hearing in which Agent Landis, the DEA supervisor, members of the surveillance team, and one of the officers investigating the accident testified, the district court granted the motion to dismiss. 1-ER-2-14; *see also* 3-ER-417-19 (transcript of district court's initial assessment).

The court accepted as undisputed that Agent Landis proceeded through a stop sign at roughly 18 miles per hour, that the cyclist had the right of way, that Agent Landis was actively engaged in a federal surveillance operation at the time, and that the operation was not characterized by an immediate emergency. 1-ER-3. The court further found that while Agent Landis had acted negligently and the fatal collision was a tragic, avoidable accident, these facts did not preclude immunity. *Id.*

The dispositive legal question, the court explained, was "whether it was 'necessary and proper' for Landis to run the stop sign to perform his duties that day as a DEA Special Agent enforcing the nation's drug laws." *Id.* at 3-4. "Applying the

- 10 -

undisputed facts to the caselaw," the court concluded that "the answer to that question is 'yes.'" *Id.* at 4.

Describing surveillance as a "very active beehive," the court explained that "[t]he suspect's vehicle is the hive and the agents are numerous bees surrounding the hive at various directions and distances, constantly moving about while checking back in at the hive at various times." *Id*. at 6. That dynamic environment requires agents to change positions frequently and sometimes violate traffic laws. *Id.* The court credited testimony from numerous witnesses that such conduct—including speeding, lane changes, and stop sign violations—is often a necessary component of DEA surveillance operations. *Id.* at 6 & n.2.

Evaluating Agent Landis's conduct in that context, the court emphasized that his decision to proceed through the stop sign was not impulsive or casual. *Id.* at 6–7. He slowed, looked both ways, and—believing it safe—entered the intersection at about 18 mph. *Id.* at 7. Agent Landis testified that he believed it was his "job" to do so in order to rejoin the surveillance team. *Id.* at 8.

The court rejected the State's argument that the absence of an "emergency" made Agent Landis's conduct per se unreasonable, emphasizing that DEA surveillance operations often require tactical decisions independent of emergent circumstances. *Id.* It also dismissed the contention that the accident itself created a triable issue for a jury, finding that an error in judgment—even one with tragic

consequences—does not negate an objectively reasonable, good-faith belief in the necessity of the act. *Id.*

Although the court concluded that "in hindsight, Agent Landis greatly miscalculated the relative safety of driving through the stop sign," it concluded that his belief in the necessity and safety of doing so was honest and reasonable under the circumstances. *Id.* at 12–13. Accordingly, the court held that he was entitled to Supremacy Clause immunity and dismissed the case. *Id.* at 13.

This appeal followed.

## V.    SUMMARY OF THE ARGUMENT

On March 28, 2023, Agent Landis was part of a DEA task force engaged in what he described as "a critical mission involving a dangerous fentanyl trafficker." Surveillance operations are inherently dynamic and often require agents to make rapid tactical decisions, including whether to disregard certain traffic laws. After the suspect made an abrupt, un-signaled turn and several agents lost visual contact, Agent Landis knew he needed to rejoin the team. He slowed, looked both ways, and—believing it safe and necessary—proceeded through a stop sign. Tragically, he collided with a cyclist he did not see. But the relevant question is not whether Agent Landis's judgment was perfect in hindsight; it is whether his belief in the necessity and propriety of his actions was reasonable under the circumstances.

- 12 -

The district court correctly answered that question in the affirmative. Applying the well-established standard from *Clifton v. Cox*, 549 F.2d 722 (9th Cir. 1977), the court found that Agent Landis honestly believed his conduct was necessary to carry out his duties, and that his belief was objectively reasonable. The court reached that conclusion based on undisputed evidence, including live testimony from agents, DEA policy, surveillance protocols, and video footage. The State offered no contrary evidence—only post hoc disagreement with Agent Landis's judgment. But Supremacy Clause immunity protects federal officers from precisely this kind of second-guessing. Where, as here, a federal agent makes a good-faith, reasonable decision in the course of his duties, immunity applies. This Court should affirm.

## VI.   STANDARD OF REVIEW

This Court has not squarely addressed the standard of review applicable to a district court's decision granting Supremacy Clause immunity following an evidentiary hearing. In *Clifton*, 549 F.2d 722, this Court articulated a two-part test for such immunity: a federal officer is immune from state prosecution if (1) the officer was acting within the scope of federal authority and (2) the officer's conduct was "necessary and proper" to the performance of his federal duties. *Id.* at 728.

Although *Clifton* did not explicitly delineate the overall standard of review, it reviewed the first prong—whether the officer was acting within the scope of federal authority, which is not in dispute here—*de novo*. *Id.* at 726 ("The issue of

petitioner's scope of authority presents a question of law which we find was properly resolved by the district court.") The second prong—whether the officer's conduct was necessary and proper—was treated as a factual determination reviewed for clear error. *Id.* at 729 (affirming the district court's finding that the conduct was necessary and proper, and concluding that "[w]e cannot on the basis of the overall record conclude that these findings are clearly erroneous").

In the civil context, this Court reviews *de novo* whether federal officials are entitled to absolute or qualified immunity. *Rieman v. Vazquez*, 96 F.4th 1085, 1090 (9th Cir. 2024) (citing cases).

Accordingly, any factual findings underlying the district court's analysis—such as whether Agent Landis believed his actions were necessary and proper—should be reviewed for clear error.[2] But the ultimate determination of whether Agent Landis is entitled to Supremacy Clause immunity is a question of law subject to *de novo* review.

---

[2] Agent Landis maintained—and the district court agreed—that no material facts were in dispute. 1-ER-3.

- 14 -

## VII.  ARGUMENT

### A.  Agent Landis Is Entitled to Immunity if His Conduct Was Within the Scope of His Duties and Was Objectively and Subjectively Necessary and Proper.

The Supreme Clause provides that the "Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the . . . Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. This foundational principle ensures that the activities of the federal government are free from state interference, unless Congress expressly provides otherwise. *Hancock v. Train*, 426 U.S. 167, 178 (1976). This immunity extends not only to the United States itself, but also to its officers when they are carrying out federal functions. *Wyoming v. Livingston*, 443 F.3d 1211, 1217 (10th Cir. 2006) (states may not "impede or interfere with the actions of federal executive officials when they are carrying out federal laws").

Agent Landis is immune from state prosecution if (1) the charged conduct occurred while he was acting within the scope of his federal authority, and (2) the conduct was "necessary and proper" to the performance of his duties. *In re Neagle*, 135 U.S. 1 (1890); *Clifton*, 549 F.2d at 728; *Texas v. Kleinert*, 855 F.3d 305, 314–15 (5th Cir. 2017).

There is no dispute as to the first element here. The State has conceded—and the district court found—that Agent Landis was acting in the scope of his official

- 15 -

duties as a DEA agent conducting surveillance at the time of the accident. Op. Br. at 25; 3-ER-418; *U.S. Dist. Ct. for the Dist. of Oregon*, *Eugene*, 2024 WL 2270514, at *1.

The sole issue on appeal relates to whether Agent Landis's actions were "necessary and proper." That test contains two components: (1) he must have had a *subjective* belief that his conduct was necessary to carry out his duties, and (2) that belief must be *objectively* reasonable under the circumstances. *Clifton*, 549 F.2d at 728; *Tanella v. City of New York*, 374 F.3d 141, 147 (2d Cir. 2004); *Kentucky v. Long*, 837 F.2d 727, 744 (6th Cir. 1988).[3] Importantly, the standard does not require that the officer be correct in hindsight. Rather, "[p]roper application of this standard does not require a petitioner to show that his action was in fact necessary or in retrospect justifiable, only that he reasonably thought it to be." *Clifton*, 549 F.2d at 728.

---

[3] There is some debate as to whether a federal officer's subjective belief remains a necessary component of Supremacy Clause immunity in light of *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982), which held that qualified immunity should turn on objective reasonableness alone, without regard to the official's subjective intent. *See Idaho v. Horiuchi*, 253 F.3d 359, 366 n.11 (9th Cir.) (*en banc*), *vacated as moot*, 266 F.3d 979 (9th Cir. 2001) (*en banc*); *Livingston*, 443 F.3d at 1221. In this case, because the State appeared not to dispute Agent Landis's subjective belief at the time of the motion to dismiss, the defense did not ask the district court to resolve that legal question. Nor must this Court. The record contains overwhelming evidence that Agent Landis honestly believed his actions were necessary to fulfill his duties, so even if a subjective component remains part of the standard, it is plainly satisfied here.

The first prong focuses on Agent Landis's *honest belief* at the time of the conduct, and not whether his actions were legally justified or turned out to be mistaken. *Id.* That belief must be assessed in light of the facts as they appeared to Agent Landis in the moment. *Id.*; *see also Tanella*, 374 F.3d at 147 (courts "must view all of the circumstances as they appeared to" the officer at the time of the action at issue).

The second prong asks whether Agent Landis's belief—however honest—was *objectively reasonable* given the facts known to him at the time. *Tanella*, 374 F.2d at 151. Immunity applies where an officer "'had no motive other than to discharge his duty under the circumstances as they appeared to him and . . . had an honest and reasonable belief' that his actions were necessary and proper." *Id.* (quoting *In re McShane,* 235 F. Supp. 262, 274 (N.D. Miss. 1964)).

## B.    The District Court Properly Decided Pretrial that Agent Landis was Entitled to Immunity.

Agent Landis moved to dismiss the indictment pretrial under Rule 12(b) of the Federal Rules of Criminal Procedure, asserting Supremacy Clause immunity. That procedure was proper. *See United States v. Smith*, 866 F.2d 1092, 1096 n.3 (9th Cir. 1989) (immunity is a defense that can and should be resolved pretrial). Because Supremacy Clause immunity is an absolute defense to state criminal charges, *Long*, 837 F.2d at 750, an early determination is essential to fulfilling its purpose. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("immunity questions [should be

resolved] at the earliest possible stage in litigation"); *Long*, 837 F.2d at 751 ("Speed serves the congressional purpose of preventing interference with the enforcement of federal laws.")

Once immunity is raised, the burden shifts to the State to come forward with evidence sufficient to raise a genuine factual dispute as to whether the agent's actions exceeded what was "necessary and proper" to the performance of his duties. *Long*, 837 F.2d at 752. Allegations alone do not suffice. *Tanella*, 374 F.3d at 148. If the State fails to meet that burden, the court must grant immunity. *Long*, 837 F.2d at 752.[4]

The State apparently does not dispute that Supremacy Clause immunity may be decided pretrial. It argues only that the district court erred in granting it here, chiefly because, according to the State, the court failed to construe the facts in its favor. But the State's argument boils down to two incorrect claims: first, that the court was bound to accept not only its version of the facts but also its legal

---

[4] This Court has not issued a binding opinion setting out the procedures for determining Supremacy Clause immunity. The most thorough treatment remains the now vacated *en banc* decision in *Idaho v. Horiuchi*, 253 F.3d 359 (9th Cir. 2001), *vacated as moot*, 266 F.3d 979 (9th Cir. 2001). That case arose from Idaho's attempted prosecution of an FBI sniper involved in the Ruby Ridge incident. While not precedential, *Horiuchi* offers a comprehensive analysis of how Supremacy Clause immunity applies to federal law enforcement actions. The majority and dissent disagreed over whether there were factual disputes that needed to be resolved before the court could make a finding of immunity. But a majority of the judges appeared to agree on one key point: disputes over immunity—including the reasonableness of the officer's actions—are to be resolved by the court, not a jury.

conclusions; and second, that the court was required to disregard undisputed evidence that undermined the State's theory of the case. Neither claim is supported by law or logic.

### 1. The District Court Was Not Bound by the Indictment's Allegations.

The State first argues that the district court was required to accept the indictment's allegations, particularly that Agent Landis acted with criminal negligence. *See* Op. Br. at 26-27.[5] That is incorrect. An indictment is not evidence. *United States v. Lyman*, 592 F.2d 496, 502 (9th Cir. 1978); *United States v. Ramirez*, 710 F.2d 535, 545 (9th Cir. 1983). And its allegations do not control the immunity analysis. *Tanella*, 374 F.3d at 148.

District courts are not required to treat charging language as dispositive of a federal officer's intent, much less as proof that an agent acted outside the scope of federal duties. *Long*, 837 F.2d at 740 n.5 (holding indictment insufficient to defeat immunity where evidence did not create factual dispute as to agent's belief or intent). If mere allegations were enough to defeat immunity, federal officers would

---

[5] It is not even clear the State preserved this argument. The State argued below that the mere fact of the accident required a jury to decide reasonableness. 1-ER-8. But the argument it advances now—that the court was required to accept the indictment's mens rea allegations as true—was never raised below. This Court does not consider arguments raised for the first time on appeal. *Rose Ct., LLC v. Select Portfolio Servicing, Inc.*, 119 F.4th 679, 688 (9th Cir. 2024). It should adhere to that rule here.

likely be denied pretrial protection in every case, rendering the immunity illusory. *See id.* at 752.

That is why courts routinely grant Supremacy Clause immunity despite serious state charges. In *Clifton*, for example, a federal agent was indicted by a California grand jury for second-degree murder and involuntary manslaughter after shooting a man who the agent mistakenly believed had escaped and shot at other officers. 549 F.2d at 723. This Court affirmed the district court's dismissal on immunity grounds, even though second-degree murder requires—and the indictment alleged—that the agent acted with "malice aforethought." *Id.* at 728–29. Similarly, in *Long*, an FBI agent was indicted for burglary—based on an allegation that he entered or remained in a building "with intent to commit a crime," 837 F.2d at 728-29—yet the court found immunity applied because the State failed to present evidence rebutting the agent's testimony that his actions were necessary and proper. *Id.* at 752. And in *Tanella*, a DEA agent indicted for first-degree manslaughter was granted immunity despite the indictment's allegation that he acted with intent to inflict serious injury. 374 F.3d at 145–50. While the Second Circuit started with the principle that it was required to "view the evidence in the light most favorable to the State and assume the truth of the allegations in the indictment," it made clear that the State could not defeat a claim of immunity by mere allegations. *Id.* at 148.

- 20 -

So too here. The district court was not deciding guilt or innocence. Its role was to determine whether Agent Landis's actions—taken in the course of his federal duties—were reasonable under the circumstances. *Id.* at 149–50. In doing so, the court properly relied on *actual evidence*: *e.g.*, testimony, surveillance protocols, and DEA policy—not unsupported allegations. Accepting the State's allegations as true at this stage would turn Supremacy Clause immunity on its head, forcing federal officers to stand trial for acts committed in the reasonable execution of their duties. That is precisely what immunity is designed to prevent. *Long*, 837 F.2d at 752 ("The goal of the *Neagle* line of cases is not only to avoid the possibility of conviction of a federal agent, but also to avoid the necessity of undergoing the entire process of the state criminal procedure.").

### 2. The District Court Properly Found the Relevant Facts Were Undisputed and Supported Immunity.

The State's broader contention—that the district court failed to view the facts in the light most favorable to the State—also fails. The key facts were not in dispute. The State offered no conflicting evidence about the events leading up to the accident, Agent Landis's conduct, or his belief that his actions were necessary and safe. Its objection is not to any factual finding, but to the district court's legal conclusion drawn from undisputed evidence.[6]

---

[6] The district court was permitted to and did make findings of fact relevant to the motion to dismiss based on the evidence presented at the hearing. *Long*, 837 F.2d

That conclusion was well-founded. The court recognized—based on overwhelming testimony—that DEA surveillance frequently requires agents to violate traffic laws. This was not speculation. Every testifying DEA agent, including the Special Agent in Charge, confirmed that surveillance operations routinely involve speeding, rolling through stop signs, and abrupt lane changes. 3-ER-197–98, 262-63, 1-ER-6. One officer told the grand jury that without such tactics, agents would "be completely ineffective." 2-ER-92. Another agent—described as risk-averse—ran the same stop sign moments before Agent Landis, explaining that he believed it was "a necessary risk" that he could take safely. 2-ER-71; 3-ER-272.

The Special Agent in Charge testified that he had personally committed similar traffic violations while conducting surveillance and that he had never disciplined an agent for doing so. 3-ER-197–98. Even the State's own accident reconstructionist acknowledged disregarding traffic controls during police operations. 3-ER-401.

The State claims this testimony was "generalized" and that the district court improperly adopted a blanket rule insulating all traffic violations. Op. Br. 30–31. But the record says otherwise. The testimony was specific, consistent, and unrebutted.

---

at 752; *see also Clifton*, 549 F.2d at 724 (noting that "[t]he district court held an evidentiary hearing, lasting three days, and found the following facts . . . "); Fed. R. Crim. Pro. 12(d) ("When factual issues are involved in deciding a motion, the court must state its essential findings on the record.")

And the district court made clear that there are limits, expressly noting that had Agent Landis been traveling significantly faster, the outcome of this case might have been different. 1-ER-9. The court did not immunize all traffic violations; it determined that, on the facts of this case, Agent Landis's decision was reasonable. That is precisely what the law requires.

### 3. The district court properly considered DEA policy and found no violation.

The State also contends that the district court "appeared to ignore entirely" DEA's driving policy. Op. Br. at 31 (citing 1-ER-9). That's inaccurate. The court addressed the policy and correctly explained that the legal standard is not whether Agent Landis complied with internal policy, but whether he subjectively and reasonably believed his actions were necessary and proper. 1-ER-9 n.2; see *Clifton*, 549 F.2d at 727 ("[E]rrors of judgment in what one conceives to be his legal duty will not, alone, serve to create criminal responsibility of a federal officer."); *Long*, 837 F.2d at 740–41 (FBI agent's violation of policy was not a basis for criminal charges because the "test of what is 'necessary and proper' is a subjective one that goes to whether the defendant reasonably thought his conduct was necessary and justifiable").

In any event, the evidence showed that Agent Landis complied with DEA policy. That policy allows agents to disregard traffic laws when necessary for law enforcement objectives, so long as they account for safety. 3-ER-198–99. Every

testifying agent—including the Special Agent in Charge—confirmed that Agent Landis's conduct was within policy, and none had ever been disciplined for similar decisions or observed Agent Landis violate DEA policy. 3-ER-204, 240, 265, 288.

The State's reading of DEA policy is just that: its own, and one untethered to how the policy is actually understood or applied. The district court was not obliged to adopt the State's interpretation over the consistent, unrebutted testimony of DEA agents—including the Special Agent in Charge—who operate under and enforce that policy every day.

### C. The District Court Correctly Concluded that Agent Landis is Entitled to Supremacy Clause Immunity.

The district court's conclusion that Agent Landis is entitled to immunity is firmly grounded in both the law and the evidentiary record. The State's effort to reframe the issue as a dispute over factual findings mischaracterizes the court's reasoning. The relevant facts were undisputed. The only questions were legal: whether Agent Landis subjectively believed his actions were necessary and proper, and whether that belief was objectively reasonable. *Clifton*, 549 F.2d at 728. The district court answered both questions correctly.

#### 1. Agent Landis Subjectively Believed His Actions Were Necessary and Proper.

The district court found that "the undisputed evidence is that Landis subjectively believed it was necessary to run the stop sign to catch up with 'the eye'

- 24 -

of the surveillance team." 1-ER-5. The State disputes that conclusion, arguing that Agent Landis never explicitly said he believed driving through the intersection at 18 mph was necessary, and that his grand jury testimony contradicts any such belief. Op. Br. at 27-28. Neither claim withstands scrutiny.

To establish subjective belief, Agent Landis needed only to show that he honestly believed his actions were justified, not that they were correct in hindsight. *Clifton*, 549 F.2d at 728; *Tanella*, 374 F.3d at 147. He did so through both his grand jury and evidentiary hearing testimony. The State, by contrast, offered no affirmative evidence to rebut that belief, as it must. *See Tanella*, 374 F.3d at 147-48. Instead, it relied solely on post hoc speculation, second-guessing Agent Landis's judgment based on the accident's outcome rather than confronting what he actually knew and believed at the time.

Before the grand jury, Agent Landis explained that he was "driving with a purpose" and needed to "catch up with [his] team members." 2-ER-150, 151. He testified that when approaching the intersection, he slowed down, looked both ways, and saw nothing that would "cause conflict." 2-ER-153. Surveillance video corroborated that he braked before entering the intersection. 2-ER-168–69.

At the evidentiary hearing, where defense counsel had an opportunity to elicit the whole story, Agent Landis provided additional detail. After losing the suspect vehicle, he knew that multiple agents—including himself—were out of position. 3-

- 25 -

ER-322–24. He testified that rejoining the team was "necessary" and that his role required him to "act quickly." *Id*. He explained that "driving with a purpose" meant doing what was necessary to complete a critical mission involving a known fentanyl trafficker. 3-ER-325.

When asked specifically whether he believed that entering the intersection without stopping was "proper and necessary," he answered unequivocally: "Yes, absolutely." 3-ER-331. He explained that his role required him to make that decision, and that based on what he knew at the time, he believed he could do so "without endangering anybody's safety." *Id*.

The State did not rebut this testimony. It relied instead on what Agent Landis did not say—such as the precise speed at which he entered the intersection—even though there was no evidence he was aware of that speed at the time. And it attempted to impeach his belief based on post hoc assessments of danger, including the intersection's visibility. But Agent Landis testified he had never driven in that area before and did not realize the view was obstructed until after the accident. 2-ER-152; 3-ER-339. That testimony, too, was unrefuted.[7]

_____

[7] For example, at the hearing, the State argued that Agent Landis's subjective belief lacked support because "this wasn't a case where the subject was in danger of being lost" and the real question was "whether he had a subjective belief that entering a blind intersection [was necessary] to take up his position to be closer." 3-ER-413. But that misstates both the facts and the legal standard. Agent Landis and others testified that there was concern about losing the target, and no evidence suggested otherwise. More importantly, the State framed the wrong question. The

The State also attempted to undermine Agent Landis's subjective belief by noting the absence of an "emergency," meaning a situation requiring lights, sirens, or an imminent threat to life.[8] But Agent Landis fully acknowledged that, while emphasizing that the mission was nonetheless "critical" and "not just a commute to work." 3-ER-325. He testified that he "was a part of a critical mission involving a dangerous fentanyl trafficker" and was "driving with a purpose" to rejoin his team. *Id*. Once again, the State offered no evidence to contradict that testimony.

The district court correctly found that "the undisputed evidence" showed Agent Landis believed his actions were necessary and proper. 1-ER-12. The State's response amounts to second-guessing; a rejection of Agent Landis's judgment based on what ultimately happened. But that is not the test. "[A] federal agent seeking federal immunity is not required 'to show that his action was in fact necessary or in retrospect justifiable, only that he reasonably thought it to be.'" *Id.* (quoting *Clifton*, 549 F.2d at 728).

---

relevant inquiry was whether Agent Landis's belief was reasonable based on what he knew at the time—not based on conditions, like the obstructed view, that he never perceived. *Tanella*, 374 F.3d at 150, 152. The State's hindsight-driven framing simply ignores the controlling legal test.

[8] The cases do not—as the State contends—condition immunity on a finding of exigency. Op. Br. at 34. The key is whether the action was necessary and the record was replete with testimony that there was an urgency to the situation that made breaking traffic laws necessary. See, e.g., 3-ER-191, 202, 229-30, 235, 261, 278-79, 284-86, 324-25.

### 2.   Agent Landis's Actions Were Objectively Reasonable.

The district court also correctly concluded that Agent Landis's belief was objectively reasonable. Under *Clifton* and its progeny, the second prong of the immunity analysis asks whether a reasonable federal officer in Agent Landis's position—faced with the same facts—could have reached the same judgment. *Clifton*, 549 F.2d at 728–29; *Tanella*, 374 F.3d at 150–51.

The State claims the district court applied the wrong standard, contending that the court could not properly grant immunity unless no reasonable trier of fact could find Landis acted unreasonably. Op. Br. at 34, 38. But the case it cites for that principle, *Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011),  was an excessive force case involving significant factual disputes, not a case involving Supremacy Clause immunity.[9]  While *Torres* emphasized that summary judgment in excessive force cases should be granted "sparingly," *Id.* at 1125, this Court, in subsequent

---

[9] The *Torres* case—which involved the use of force—is completely inapposite to this case. In *Torres*, the officer mistook her gun for her taser and killed an unarmed suspect who was handcuffed in the back of a patrol car. 648 F.3d at 1120. The question was whether that mistake was reasonable. This was not the officer's first time mistaking her gun for a taser; she had done so twice before and had been instructed to practice in order to distinguish the two weapons. *Id.* at 1125. The district court discounted this because of the rapidly evolving situation, but the officer herself testified that she did not fear for her own safety at the time she fired the weapon. *Id.* at 1126. This Court concluded that, based on all those facts, the question of whether the officer reasonably mistook her gun for the taser was a question for the jury. *Id.*

- 28 -

cases, has recognized, the "trend" has been "toward resolving qualified immunity as a legal issue before trial whenever possible." *Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017). This is particularly important in the Supremacy Clause context, where immunity is a threshold issue to be resolved pretrial to avoid the very harm that litigation imposes. *Long*, 837 F.2d at 752; *Tanella*, 374 F.3d at 147.

Qualified immunity precedent confirms that the question of reasonableness is a legal question for the court, not the jury. Courts routinely grant immunity unless no reasonable officer could have believed the conduct was lawful. The State made no such showing here.

Qualified immunity protects federal officers unless: (1) they violated a constitutional right; and (2) that right was "clearly established" at the time, such that every officer would have understood that what he is doing violated it. *Morales*, 873 F.3d at 821. The second question is an objective inquiry focused on whether "'existing precedent'" placed the legal question "*beyond debate*," such that "'every' reasonable official—not just 'a' reasonable official—would have understood that he was violating a clearly established right." *Id.* at 823 (citation omitted, emphasis added). And as *Morales* makes clear, that inquiry is one for the court, not the jury. *Id.* at 823–24. The jury's role is limited to resolving genuine disputes of fact, not determining whether the officer's conduct was objectively reasonable under the law.

- 29 -

Contrary to the State's claims suggestion, objective reasonableness does not require unanimous agreement that Agent Landis made the "correct" call. "Officers of reasonable competence could disagree," and immunity would still apply. *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Lennon v. Miller,* 66 F.3d 416, 425 (2d Cir. 1995). The only disqualifying conclusion would be that "*no* reasonable officer would have made a similar choice." *New York v. Tanella*, 281 F. Supp. 2d 606, 624 (E.D.N.Y. 2003), aff'd, 374 F.3d 141 (2d Cir. 2004) (emphasis added); *cf. Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (when judging the reasonableness of an officer's actions, allowance must be made for the "tense, uncertain, and rapidly evolving" circumstances in which he found himself); *Spencer v. Pew*, 117 F.4th 1130, 1140 (9th Cir. 2024) (same).

The State made no such showing, nor did it identify any material factual dispute requiring jury resolution before the court could determine reasonableness. The district court considered the full record, including the importance of the mission, the exigencies of surveillance, the conduct of other agents, and the accident itself. 1-ER-5–8. It found, correctly, that the record contained no evidence suggesting Agent Landis "employed means which he could not honestly consider reasonable." 1-ER-8

(quoting *Clifton*, 549 F.2d at 730).[10] Significantly, *no* testifying agent or officer suggested that Agent Landis's conduct was unreasonable.

The outcome was unquestionably tragic. But tragedy does not render Agent Landis's conduct unreasonable. The reasonableness of an officer's actions must be judged based on what he knew at the time, not with the benefit of hindsight. Even a serious error in judgment, standing alone, does not create criminal liability: "Errors of judgment in what one conceives to be his legal duty will not, alone, serve to create criminal responsibility." *Clifton*, 549 F.2d at 727.

That principle is central to the Supremacy Clause immunity analysis. Immunity does not turn merely on whether a federal officer was "on duty" in some general sense, but on whether he reasonably believed his actions were necessary to

---

[10] The State does not dispute Oregon's fentanyl crisis but now faults the district court for giving it "undue . . . weight." Op. Br. at 32. That criticism rings hollow. The State argued that this was not an emergency and thus did not justify Agent Landis's actions. In response, Agent Landis presented unchallenged evidence—through testimony and exhibits—about the nature of the surveillance and the broader public safety threat posed by fentanyl trafficking. The district court appropriately considered that context. This was not surveillance of a petty shoplifter; it was an operation targeting a fentanyl trafficker during an active drug crisis. That context was one of several relevant circumstances the district court properly weighed in assessing whether Agent Landis's conduct was reasonable. *See Clifton*, 549 F.2d at 727 n.9 ("It is the existence of reasonable grounds for the belief formed at the time and in light of *all the circumstances* … that affords a basis for qualified immunity." (emphasis added)).

- 31 -

carry out a specific job-related function.[11] That is precisely what Agent Landis

testified to, and the record contains no evidence to the contrary. 1-ER-8–11.

---

[11] *Compare Texas v. Kleinert,* 855 F.3d 305 (5th Cir. 2017) (immunity appropriate where federal task force agent's firearm accidentally discharged while struggling with a suspected fleeing felon)*, Livingston,* 443 F.3d 1211 (federal agent in charge of wolf reintroduction program entitled to immunity for trespassing and littering after entering private property in the course of tranquilizing and installing collar monitoring devices on wolves), *Tanella,* 374 F.3d 141 (DEA agent entitled to immunity where he believed his life was in danger when he shot and killed suspected drug dealer), *Clifton,* 549 F.2d 722 (immunity appropriate where agent executing arrest warrant shot and killed fleeing suspect based on mistaken belief that suspect had shot another agent and was a danger to others), *California v. Dotson,* No. 12-cr-0917-AJB, 2012 WL 1904467 (S.D. Cal. May 25, 2012) (immunity appropriate where agent was involved in a fatal accident after passing through a stop sign at 78 miles per hour, without police lights or sirens, in an "effort to catch up with the suspect and the rest of his team"), and *In re: McShane,* 235 F. Supp. 262 (immunity appropriate for federal official who ordered teargas to be fired into a crowd to quell a campus riot) *with Mesa v. California*, 489 U.S. 121 (1989) (Postal Service mail truck drivers *not entitled to immunity* where, although on duty at the time of traffic accidents, there was no showing (or even assertion) that driving outside a laned roadway, speeding, or failing to yield were necessary to their job duties (delivering the mail)), *State v. Cisneros*, 947 F.2d 1135 (4th Cir. 1991) (truck driver *not entitled to immunity* where, although on duty at the time of traffic accident, there was no showing (or assertion) that driving a truck with defective brakes was necessary to his job duties (driving in a convoy)), *State v. Ivory*, 906 F.2d 999 (4th Cir. 1990) (truck driver *not entitled to immunity* where, although on duty at the time of traffic accident, there was no showing (or assertion) that entering an intersection with the mistaken belief that he had the right of way was necessary to his job duties (driving in a convoy)), *and Morgan v. California*, 743 F.2d 728, 733-34 (9th Cir. 1984) (even though agents were on duty at the time of the incident, removal to federal court was improper absent a showing that "it would be necessary and proper for [the agent] to drive while under the influence in order to carry out his federal duty" or that "use of force [was necessary in connection with] a minor traffic incident").

Even viewing the evidence in the light most favorable to the State, the district court correctly found that Agent Landis reasonably believed his actions were necessary, and that this belief was itself objectively reasonable. There is no credible argument that all—or even most—reasonable officers in his position would have acted differently. The tragic result does not alter that conclusion. Supremacy Clause immunity exists precisely to prevent federal officers from being subjected to state prosecutions under these circumstances. Agent Landis is entitled to that protection.

///

///

///

///

///

///

///

///

///

///

///

///

///

## VIII. CONCLUSION

Federal officers must be able to perform their duties without fear of criminal prosecution by a state, particularly when they make reasonable, good-faith judgments in the course of dangerous and dynamic missions. That is the core protection afforded by Supremacy Clause immunity. Agent Landis did not act with malice or indifference. He acted with purpose, in service of an urgent federal mission, and based on a reasonable belief that his conduct was necessary to reestablish surveillance of a suspected fentanyl trafficker. The tragic outcome does not transform a misjudgment into a crime. The district court correctly concluded that Agent Landis's actions were both subjectively and objectively reasonable. Its judgment should be affirmed.

DATED: June 16, 2025      Respectfully submitted,

By:   *s/David H. Angeli*
ANGELI & CALFO LLC
DAVID H. ANGELI, OSB No. 020244
MICHELLE KERIN, OSB No. 965278
AMY E. POTTER, OSB No. 231794
AMANDA THIBEAULT, OSB No. 132913
*Attorneys for Samuel Landis*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** No 25-447

I am the attorney or self-represented party.

**This brief contains** 7,155 **words,** including [        ] words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [        ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ David H. Angeli **Date** 06/16/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Plaintiffs state that they are not aware of any cases pending in this Court that are related to this case.

DATED: June 16, 2025

By:     *s/ David H. Angeli*
        **ANGELI & CALFO LLC**
        DAVID H. ANGELI, OSB No. 020244
        MICHELLE KERIN, OSB No. 965278
        AMY E. POTTER, OSB No. 231794
        AMANDA THIBEAULT, OSB No. 132913
        *Attorneys for Defendant Samuel Troy Landis*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 16, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: June 16, 2025

By:   *s/ David H. Angeli*
ANGELI & CALFO LLC
DAVID H. ANGELI, OSB No. 020244

*Of Attorneys for Samuel Landis*